# United States Court of Appeals
## For the First Circuit

No. 05-2237

GILBERTO SANTA-ROSA, et al.,

Plaintiffs, Appellants,

v.

COMBO RECORDS, et al.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, <u>U.S. District Judge</u>]

Before

Torruella, <u>Circuit Judge</u>,
Baldock,[*] <u>Senior Circuit Judge</u>,
and Stahl, <u>Senior Circuit Judge</u>.

<u>Roberto Sueiro-del Valle</u>, for appellants.
<u>Juan H. Saavedra-Castro</u>, with whom <u>José A. Hernández-Mayoral</u>,
was on brief, for appellees.

December 15, 2006

---

[*] Of the Tenth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  Gilberto Santa-Rosa ("Santa Rosa") sued Combo Records ("Combo"), its owners, insurers, and distributors, seeking compensation for the sales of five albums he recorded more than fifteen years ago, and which Combo has been selling ever since.  The district court dismissed all of Santa Rosa's claims.  Santa Rosa now appeals the dismissal of two of his claims: his claim for rescission of his recording contract, and his claim for a declaratory judgment that he has an ownership interest in the recordings.  After careful consideration, we affirm.

## I.  Background

Santa Rosa is an accomplished salsa singer, producer, and composer.[1]  He lives in Puerto Rico and is known as the "Caballero de la Salsa."  Combo is a record production company owned by Ralph Cartagena and located in New York.  Santa Rosa states that sometime between 1984 and 1986, he and Combo came to an agreement by which he agreed to record four albums for Combo and Combo agreed to pay him "artist royalties" for all albums sold.  Santa Rosa no longer

---

[1]   See, e.g., Robert Domínguez, Maite Junco and Leo Standora, Shakira Crowned New Latin Queen, N.Y. Daily News, Nov. 3, 2006 at 2 ("Popular Puerto Rican singer Gilberto Santa Rosa, known as The Gentleman of Salsa [won a Latin Grammy for] Best Salsa Album"); David Cazares, Salsa, Merengue Away at Carnaval Miami, Fort Lauderdale Sun-Times, Feb. 21, 1997 at 19 ("Gilberto Santa Rosa, the young bandleader and singer whose music is among the most complex and challenging being produced, performs with a traditional band that includes a large horn section."); Jon Pareles, Pop and Jazz in Review, N.Y. Times., July 30, 1992 at C16 ("Gilberto Santa Rosa [is] one of Puerto Rico's most popular young singers.").

has a copy of the purported agreement, but claims that a copy of this agreement exists and that Combo has it.

Santa Rosa recorded four albums between 1986 and 1989 for Combo, including "Good Vibrations" (1986), "Keeping Cool" (1987), "De Amor y de Salsa" (1988), and "Salsa en Movimiento" (1989).[2] Combo later released "El Caballero de la Salsa," a compilation of Santa Rosa songs. Combo paid $11,280 in advance royalties to Santa Rosa between 1986 and 1989. Since 1989, Combo states that it has "continued to manufacture, distribute, and sell thousands of the albums and compilations [but Combo] has never paid Santa Rosa any additional royalties or given him royalty statements for the sale of the aforementioned albums." Santa Rosa had not requested additional royalties until he brought the present suit.

On May 7, 2004, Santa Rosa and his then-wife, Nélida Acevedo Rivera, filed suit against Combo, Ralph Cartagena, Combo's insurance company, and all record distributors or other persons liable for the acts of Combo, seeking rescission of his contract based on material breach and damages for unjust enrichment. On October 13, 2004, Santa Rosa filed an amended complaint which added claims for a declaratory judgment as to the ownership of the recordings and a violation of the Lanham Act.[3] On October 18,

_____

[2] Santa Rosa was the performing artist on these records; he does not claim to have been the composer.

[3] Santa Rosa declined to appeal the dismissal of his claims for unjust enrichment and violations of the Lanham Act.

-3-

2004, Combo filed a motion to dismiss the amended complaint. On June 28, 2005, the district court granted Combo's motion to dismiss with prejudice. Santa Rosa filed a motion for reconsideration on July 14, 2005 which the district court denied on May 1, 2006. Santa Rosa now appeals from the dismissal of his complaint.

## II. Discussion

We review a decision to grant a motion to dismiss de novo, taking as true the well-pleaded facts of the complaint. Isla Nena Air Svcs., Inc. v. Cessna Aircraft Co., 449 F.3d 85, 87 (1st Cir. 2006). Dismissal is appropriate only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (internal citation and quotations omitted). However, we need not only consider the grounds for dismissal relied upon by the district court; we may affirm a dismissal on "any ground fairly presented by the record." Gabriel v. Preble, 396 F.3d 10, 12 (1st Cir. 2005).

## A. Claim for Rescission

Santa Rosa's first claim against Combo is that Combo materially breached his contract. As such, Santa Rosa contends, he is entitled to rescission of that contract. Combo responded, and the district court held, that Santa Rosa had failed to adequately plead the existence of a contract. We need not resolve the dispute

over whether a contract had been sufficiently pled.[4]  Even assuming that a contract between Santa Rosa and Combo existed, we find that Santa Rosa's claim for rescission would be preempted by the Copyright Act.

A cause of action is preempted under the Copyright Act, 17 U.S.C. § 301(a), if it does not require an element beyond "mere copying, preparation of derivative works, performance, distribution or display."   Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1164 (1st Cir. 1994) (quoting Gates Rubber Co. v. Bando Chem Indus., Ltd., 9 F.3d 823, 847 (10th Cir. 1993)).  We have never squarely decided the question of whether a simple breach of contract action that only seeks damages would be preempted by the Copyright Act.[5]  We need not do so today because Santa Rosa asks not for damages, but rather for rescission of his contract.  As we noted in Royal v. Leading Edge Products, Inc., Santa Rosa's claim

---

[4]  Indeed, both parties seem conflicted on the issue.  Combo admitted that a contract existed, but later suggested that no contract ever existed, and that if it did, its contents could never be proven.  Santa Rosa never doubted the existence of the contract, but alleged at various points that it was a written contract, an oral contract, and a contract implied-in-fact.

[5]  Some courts have suggested that a simple breach of contract claim would not be preempted.  See, e.g., Ritchie v. Williams, 395 F.3d 283, 289 (6th Cir. 2005)(holding that causes of action which included substantive elements not implicating "ownership or infringement" were not preempted because they were substantively different); Warren v. Fox Family Worldwide, Inc., 171 F. Supp. 2d 1057, 1073 (C.D. Cal. 2001) (finding that there was no Copyright Act preemption where "there is an express contractual obligation to pay royalties").

for rescission of his royalty contract presents an interesting quagmire:

> [I]f the royalty agreement stands, then the plaintiff's sole remedy for the breach of it would be money damages -- and the Copyright Act need not be construed. If, however, as plaintiff suggests, the royalty agreement is subject to rescission because of defendant's material breach thereof, then that agreement would vanish.

833 F.2d 1, 3 (1st Cir. 1987). Because a successful claim for rescission would result in there being no "'written instrument' signed by the parties," we would be required to resort to the interpretation of 17 U.S.C. § 201(b) to determine ownership of Santa Rosa's recordings. Id.; see also Rano v. Sipa Press, Inc., 987 F.2d 580, 586 (9th Cir. 1993) ("After [an agreement is rescinded], any further distribution would constitute copyright infringement.").

Because Santa Rosa seeks rescission of his contract, if we were to grant him the relief that he sought, we would be required to determine his ownership rights by reference to the Copyright Act. In such a case, there is little question that we would be merely determining whether Santa Rosa was entitled to compensation because of "mere copying" or "performance, distribution or display" of his recordings. Data Gen. Corp., 36 F.3d at 1164. As such, 17 U.S.C. § 301(a) preempts Santa Rosa's rescission claim. Once it is determined that Santa Rosa's rescission claim is preempted, his only remedy is a claim under the

Copyright Act, and "the court must then dismiss the [contract] claim for failing to state a cause of action." <u>Briarpatch Ltd.</u> v. <u>Phoenix Pictures, Inc.</u>, 373 F.3d 296, 309 (2d Cir. 2004). Thus, we find no error in the dismissal of Santa Rosa's rescission claim.

## B. Claim for Declaratory Judgment

Because Santa Rosa's rescission claim is preempted, we are left only with his claim for a declaratory judgment of ownership, which arises under the Copyright Act, 17 U.S.C. § 201. Santa Rosa claimed that the courts should resolve the "uncertainty" over ownership of his recordings by issuing a declaratory judgment that he is the sole owner of those recordings. Combo responded that Santa Rosa's declaratory judgment action was time barred. The district court agreed that Santa Rosa's claim was barred by the statute of limitations and granted Combo's motion to dismiss. <u>See</u> <u>LaChapelle</u> v. <u>Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998) (holding that dismissal is appropriate if the plaintiff's allegations "leave no doubt" that the statute of limitations would bar the claim). We agree with the district court that the declaratory judgment action is time barred and that dismissal was appropriate.[6]

---

[6] Because we find Santa Rosa's declaratory judgment action time-barred, we find no need to address, and we express no opinion as to, Combo's argument that Santa Rosa's cause of action is also barred because Santa Rosa failed to comply with 17 U.S.C. § 411(a), which states that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance

-7-

17 U.S.C. § 507(b) provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." A claim accrues when "the plaintiff 'knows or has reason to know of the act which is the basis for the claim.'" Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 96-97 (1st Cir. 2004) (quoting Rodríguez Nárvaez v. Nazario, 895 F.2d 38, 41 n.5 (1st Cir. 1990)). Thus, a claim for declaratory judgment of ownership accrues when the plaintiff "knew of the alleged grounds for the [ownership] claim." Margo v. Weiss, 213 F.3d 55, 60-61 (2d Cir. 2000); see also Merchant v. Levy, 92 F.3d 51, 56 (2d Cir. 1996)("[N]o . . . uncertainty exists as to co-ownership rights based on co-authorship. A co-author knows that he or she jointly created a work from the moment of its creation."). It goes without saying that Santa Rosa was present when his performances were recorded by Combo Records, and thus knew from the moment that each recording was created that he had a potential claim for ownership of it. Thus, there is little question that Santa Rosa's claims for co-ownership accrued as soon as he finished recording each album.[7]

---

with this title."

[7] At oral argument, Santa Rosa's counsel noted the distinction between copyrights on compositions (i.e. the music and lyrics) and on performances of those compositions (i.e. the tangible, fixed representation of the music and lyrics). See generally 6 David Nimmer, Nimmer on Copyright § 30.03 (2006) ("Copyright ownership of the physical embodiment of the performance of a musical composition (e.g., a master recording) is distinct from the ownership of the

Santa Rosa points to the Ninth Circuit's holding in Zuill v. Shanahan that a claim for a declaratory judgment would not accrue until a "plain and express repudiation of co-ownership is communicated to the claimant." 80 F.3d 1366, 1369 (9th Cir. 1996). Even applying this test for accrual of a claim, we cannot think of a more plain and express repudiation of co-ownership than the fact that Combo openly, and quite notoriously, sold Santa Rosa's records without providing payment to him: according to documents provided by Santa Rosa, at least 1,140 of the recordings in dispute were sold during the six month period between January and June of 2000, almost four years before Santa Rosa filed suit in May 2004. Likewise, it is hard to believe that a singer of Santa Rosa's stature would have been unaware that Combo Records was selling his recordings and thus claiming ownership over them until three years before this action was commenced.

Because we conclude that Santa Rosa had reason to know of his claim of ownership over the recordings soon after they were created (which was well over three years before Santa Rosa filed

---

copyright in the musical composition itself and usually is the subject of an overall contractual relationship between its performers and a record company."). However, we see no logical distinction to be made between a composer, who learns of his ownership claim when he transcribes his music onto a sheet, and Santa Rosa, who learned of his ownership claim when he performed his music in a record studio. In both cases, the "author" is "the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989).

suit against Combo), we agree with the district court that Santa Rosa's declaratory judgment action is time barred by 17 U.S.C. § 507(b).

### III.  Conclusion

For the foregoing reasons, we affirm the decision of the district court.

**Affirmed**.