TMTV CORP., Plaintiff

v.

PEGASUS BROADCASTING OF SAN JUAN D/B/A Televicentro De Puerto Rico, et al., Defendants

Suzette Baco, et al., Plaintiffs

v.

TMTV Corp., Defendant.

No. CIV. 05–1621(JP), CIV. 05–1641(JP).

United States District Court,
D. Puerto Rico.

April 25, 2007.

Agustín Collazo–Mejía, Esq., Roberto Sueiro-del Valle, Esq., San Juan, PR, for Plaintiff TMTV Corp.

Edna Hernández–Arroyo, Esq., María Luisa Martínez–López, Esq., Avila, Martínez & Hernández, José A. Hernández–

Mayoral, Esq., Patricia Rivera–MacMurray, Esq., Hernández Mayoral Law Office, San Juan, PR, Nellymarie López–Díaz, Esq., Guaynabo, PR, for Consolidated Plaintiffs and Counter–Defendants Suzette Bacó, et al.

Francisco Ortiz–Santini, Esq., Juan R. Marchand–Quintero, Esq., San Juan, PR, for Defendants Pegasus Broadcasting of San Juan d/b/a Televicentro de Puerto Rico, et al.

## OPINION AND ORDER

PIERAS, Senior District Judge.

Plaintiff, TMTV, Corp., sued Televicentro of Puerto Rico L.L.C. (WAPA–TV, Channel 4) ("WAPA"), its parent company, Lin TV San Juan Corp., and its President, and Vice President of Programming (collectively the "WAPA defendants") for copyright infringement under the Copyright Act, 17 U.S.C. § 501, and under the Lanham Act, 15 U.S.C. § 1125(a). TMTV alleges that from 1997 to 1999 it produced and aired a two-hour weekly program on WKAQ, Channel 2 ("WKAQ") in Puerto Rico. This program included a sitcom segment called "20 Pisos de Historia" ("20 Pisos"). In December of 1999, "20 Pisos" went off the air on WKAQ, and in March of 2000, WAPA began airing the weekly sitcom "El Condominio." TMTV claims "El Condominio" is an unauthorized derivative work of "20 Pisos." Suzette Bacó, Albert Rodríguez, Marian Pabón, Ivana Méndez, Efraín López–Neris, Maricarmen Avilés, Jorge A. Castro, René Monclova, Cristina Soler, Emmanuel Logroño, actors appearing in "El Condominio" (collectively "the actors"), sued TMTV for declaratory judgment of ownership, 17 U.S.C. § 201, over the copyrights to the characters they portray in that series, and for tortious interference with contracts under state law. TMTV counterclaimed against the actors for copyright infringement under the Copyright Act, 17 U.S.C. § 501, and

under the Lanham Act, 15 U.S.C. § 1125(a).

The WAPA defendants move to dismiss the Copyright Act claims on the ground that they are barred by the statute of limitations, and move for summary judgment on both the Copyright Act and Lanham Act claims on the ground they are barred by laches and other equitable defenses. The motion to dismiss on statute of limitations grounds (**No. 68**) is **GRANTED**, and the motion for summary judgment on the basis of laches and other equitable defenses (**No. 97**) is **DENIED**, although the Court will enter judgment dismissing *sua sponte* TMTV's Lanham Act claims for failure to state a claim. TMTV moves for summary judgment on some of the actors' designation of ownership claims, and on its Copyright Act claims against the WAPA defendants. TMTV's motion for summary judgment on the actors' claims (**No. 98**) is **DENIED**. The motion is denied on the grounds argued, but the Court orders the actors to show cause why TMTV is not entitled to summary judgment on their claims on the ground they are untimely under a recent First Circuit decision. The Court **DENIES** TMTV's motion for summary judgment in its Copyright Act claims (**No. 100**), because genuine issues of fact exist, such as whether "El Condominio" is substantially similar to "20 Pisos."

## I. STIPULATED FACTS

The parties stipulated to the following facts at the Initial Scheduling Conference held on September 6, 2006.

1. Defendant LIN TV Corp. is the parent company of Televicentro during the time relevant to this action and has controlled Televicentro and economically benefitted from WAPA's operation during this time.

2. Defendant José Ramos was the President of Televicentro during all times relevant to this case.

3. Defendant Margarita Millán was the Vice President of Programming for Televicentro during all times relevant to this case.

4. Televicentro has control over the facilities where "El Condominio" and "El Condominio Agrandado" are filmed.

5. Televicentro broadcast the sitcom "El Condominio" every week beginning in 2000 without TMTV's authorization, license, or consent.

6. Televicentro broadcast the sitcom "El Condominio Agrandado" every week beginning in 2001 without TMTV's authorization, license, or consent.

7. "El Condominio" and "El Condominio Agrandado" continued to air after the November 24, 2004 Order.

8. The characters "Elpidio" and "Pachango" were performed by Emmanuel Logroño before they appeared on "20 Pisos."

9. The character "Elpidio" appeared in a 1995 special television program called "Sunshine a la BBQ" transmitted by Televicentro de Puerto Rico, Inc.

10. Plaintiff Bacó interpreted the character of an alcoholic lady called "Doña Cachón" in a television show called "La Tripleta" in 1996.

11. In the second script of "20 Pisos" there is a character named "Doña Soto."

12. Said character "Doña Soto," as portrayed in "20 Pisos" by plaintiff Bacó, uses the same clothes as "Doña Cachón."

13. One of the scripts of "20 Pisos" registered by TMTV Corp. includes a character referred to as "Lolo."

14. In one of the scripts registered by TMTV Corp. there was a character named "Administrador Rivera" in the program "De Noche con Iris y Sunshine," which was initially played by Castro, and later eliminated.

15. The character "Segismundo Alberto Quiñones" appeared originally in a script of "20 Pisos" in the program "De Noche con Sunshine," which was written by Emmanuel Logroño.

16. The character "Laura Alvarez viuda de Gumbia" appeared originally in a script of "20 Pisos."

17. The script wherein the character "Laura Alvarez viuda de Gumbia" appears has not been registered by defendant TMTV.

18. The characters "Brenda Q.," "Crissy," "Doctor Sebastián Argüelles," "Kary," and "Miss Janice" did not appear in the "20 Pisos" scripts registered by TMTV, nor in any "20 Pisos" skids (aired performances) for "De Noche con Iris y Sunshine" or for "De Noche con Sunshine."

19. The characters "Brenda Q.," "Crissy," "Doctor Sebastián Argüelles," "Kary," and "Miss Janice," played by Marian Pabón, Ivana Méndez, Alberto Rodríguez, Cristina Soler, and Maricarmen Avilés, respectively, appeared for the first time in the program "El Condominio."

20. TMTV Corp. did not create the characters "Brenda Q.," "Crissy," "Doctor Sebastián Argüelles," "Kary," and "Miss Janice," nor has it ever used them.

21. Marian Pabón, Ivana Méndez, Alberto Rodríguez, and Maricarmen Avilés never worked on "20 Pisos,"

nor on "De Noche con Iris y Sunshine." They have never worked for TMTV Corp.

## II. MOTION TO DISMISS TIME BARRED COPYRIGHT CLAIMS

The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion. *Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza,* 479 F.3d 63, 85 (1st Cir.2007). The Court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 997 (1st Cir.1992). A complaint sufficiently raises a claim "even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations." *Gonzalez–Perez v. Hospital Interamericano De Medicina Avanzada,* 355 F.3d 1, 5 (1st Cir.2004). Under Federal Rule of Civil Procedure 8(f), "[a]ll pleadings shall be so construed as to do substantial justice." Judgment on the pleadings under Rule 12(c) may not be entered unless it appears beyond a doubt that the nonmoving party can prove no set of facts in support of its claim which would entitle it to relief. *Feliciano v. Rhode Island,* 160 F.3d 780, 788 (1st Cir.1998).

■ The WAPA defendants argue that TMTV's copyright infringement claims arising from "El Condominio" episodes which aired before June 9, 2002 should be dismissed on the ground that they are barred by the Copyright Act's three year statute of limitations. Civil actions under the Copyright Act of 1976 must be filed within three years of when they accrue. 17 U.S.C. § 507(b). A claim accrues when "the plaintiff knows or has reason to know of the act which is the basis for the claim." *Santa–Rosa v. Combo Records,* 471 F.3d 224, 227 (1st Cir. 2006). Copyright infringement claims can accrue more than once, because each infringement is a distinct harm. *Roger Miller Music v. Sony/ATV Publishing,* 477 F.3d 383, 390 (6th Cir.2007).

■ TMTV's predecessor in interest became aware of "El Condominio" at least as early as 2000. It alleges in its Second Amended Complaint (No. 57) that in 1999 WAPA offered Anthony Mojena, the owner of TMTV's predecessor in interest, to broadcast the programming which Mojena was broadcasting on WKAQ. Mojena refused, and then discovered Logroño planned to air on WAPA a sitcom similar to "20 Pisos." Mojena objected to the alleged copying, and reiterated his objections in early 2000 after WAPA began a promotional campaign in which the "20 Pisos" cast appeared in their "20 Pisos" costumes. On March 15, 2000, TMTV filed a copyright infringement and declaration of ownership action in this Court, case number 00–CV–1338 (RLA), against Emmanuel Logroño, Gilda Santini, and Mass Productions, Inc., a production company through which Logroño and Santini produced "El Condominio." It is clear from the pleadings TMTV became aware of the "El Condominio" in 1999 or 2000. Accordingly TMTV's copyright infringement claims arising from "El Condominio" episodes which aired before June 9, 2002 will be dismissed.

## III. MOTIONS FOR SUMMARY JUDGMENT

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appro-

priate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz,* 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989).

In a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman,* 985 F.2d at 1116.

## A. MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following material facts are properly supported, and are not in genuine issue or dispute. The court here exercises its authority under Rule 56(d) to designate these facts as established in this case.

1. In approximately January, 2000, Antonio Mojena, owner of plaintiff TMTV, Corp., became aware that Emmanuel Logroño intended to air on Televicentro a sitcom similar to "20 Pisos."

2. During that time period, TMTV, through Mojena, made clear to Logroño and Televicentro's top executives, Joe Ramos and Margarita Millán, his refusal to allow the airing of the allegedly infringing program.

3. During a meeting held in March, 2000, Mojena and his counsel were warned by Televicentro that Logroño's attorneys that the matter regarding their copyright infringement claim would have to be litigated in court.

4. "El Condominio," the allegedly infringing program, started airing weekly on Televicentro's channel 4 in March of 2000.

5. On January 1, 2000, Televicentro, represented by Ramos, and a production company, represented by Logroño, entered into a production agreement for the production and airing of, among others, a weekly half hour comedy show named "El Condominio" with a term of 156 weeks.

6. As part of the production agreement, the production company represented to Televicentro that it owned the concept of "El Condomi-

nio" and that Televicentro would have exclusive broadcasting rights over the program.

7. Televicentro's duties under the production agreement included the following:

 a. to provide technical personnel and equipment for the production of "El Condominio,"

 b. to provide promotional support to each show of "El Condominio," including a multi-media promotional campaign,

 c. to provide the producer an office on its facilities to be used in connection with the production of "El Condominio,"

 d. to pay the producer $5,000.00 per show,

 e. to provide the producer a total of ten commercial credits in each show of "El Condominio," and

 f. to pay monetary incentives to the producer according to the average rating obtained by "El Condominio."

8. On January 1, 2003, the same parties signed a new production agreement with basically the same terms agreed to in the previous production agreement, except that the amount per show would be $6,100.00.

9. As part of its contractual obligations to Logroño and the production companies, Televicentro was required to spend resources in the form of employees and materials in order to air their productions, including "El Condominio." Among the expenses incurred were the following:

 a. air time dedicated to cover promotions for the new program through the years of airing, and

 b. expenses totaling $3,281,000.00. These included payments made to the producer for each show and related production costs during the years "El Condominio" and "El Condominio Agrandado" were aired.

## B. ANALYSIS

### 1. WAPA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The WAPA defendants move for summary judgment on all of TMTV's claims on the ground they are barred by laches. The motion is denied.[1]

 Although the Fourth Circuit has held that laches does not apply to Copyright Act claims, *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir.2001), the majority of circuit courts to address the issue have applied laches to such claims. *See Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 236 (6th Cir.2007); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 949 (10th Cir. 2002); *Danjaq L.L.C. v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir.2001); *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 165 (2d Cir.2003); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir.1989). In determining whether laches applies, the Court must ask whether the plaintiff's delay in bringing suit was unreasonable, and whether the defendant was prejudiced by the delay. *In re Bankvest Capital Corp.*, 375 F.3d 51, 61 (1st Cir.2004). If a plaintiff files a complaint within the analogous statutory period, the burden of proving unreasonable delay and prejudice falls on the defendant. *Id.* at 61.

 This Court follows the majority of circuit courts and recognizes the defense

---

of laches to Copyright Act claims, but holds that genuine issues of fact exist which bar summary judgment for the defendants on this ground. The defendants have the burden of showing unreasonable delay and prejudice with respect to TMTV's claims arising from episodes aired within three years of filing the instant complaint. The defendants failed to demonstrate unreasonable delay, because they failed to demonstrate exactly when the episodes aired. Given the lack of evidence of unreasonable delay, it is unnecessary to determine whether the defendants were prejudiced by the delay, and summary judgment for the defendants on the Copyright Act claims must be denied.

## 2. TMTV'S MOTION FOR SUMMARY JUDGMENT ON OWN COPYRIGHT CLAIMS

TMTV moves for summary judgment on its copyright infringement claims against the WAPA defendants. TMTV's motion is denied.

■■■ A copyright holder has certain exclusive rights to the copyrighted work, including the right to reproduce all or any part of the copyrighted work. 17 U.S.C. § 106; *see also Johnson v. Gordon,* 409 F.3d 12, 17 (1st Cir.2005). One infringes a copyright when he or she violates one of the exclusive rights to a work held by a copyright owner, and the owner has the right to sue for infringement. *See* 17 U.S.C. § 501. To establish copyright infringement under the Copyright Act, the plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *T–Peg, Inc. v. Vermont Timber Works, Inc.,* 459 F.3d 97, 108 (1st Cir.2006). Proving the second element itself involves two steps. *Id.* at 108. The plaintiff must show (1) the defendant actually copied the work as a factual matter, either through direct evidence or through indirect means, and (2) that the defendant's copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works "substantially similar." *Id.* at 108.

■■■ Substantial similarity is measured by the "ordinary observer" test. *Id.* at 112. Under the test, two works are substantially similar if a reasonable, ordinary observer, upon examination of the two works, would "conclude that the defendant unlawfully appropriated the plaintiff's protectable expression." *Id.* at 112. If the points of dissimilarity between the works not only exceed the points of similarity, but indicate that the remaining points of similarity are, within the context of the plaintiff's work, of minimal importance, either quantitatively or qualitatively, then no infringement results. *Id.* at 112 (quoting Nimmer & Nimmer, *Nimmer on Copyright* § 13.03[B][1][a] (2006)). When determining whether substantial similarity exists with respect to a literary work, such as a television show, a court must look for, among others, "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events." *Metcalf v. Bochco,* 294 F.3d 1069, 1073 (9th Cir.2002).

■■■ Without evaluating TMTV's Copyright Act claims with respect to the elements of ownership and actual copying, the Court denies summary judgment on the claims, because genuine issues of fact exist as to whether "20 Pisos" and "El Condominio" are substantially similar. TMTV did not file the scripts nor videotapes of the episodes in support of its motion, and failed to provide record citations in support of most of the facts listed in its statement of uncontested facts as required under Local Rule 56(e). In short, the defendants are entitled to reasonable inferences in their favor that the works are not substantially similar.

### 3. TMTV'S MOTION FOR SUMMARY JUDGMENT ON ACTORS' COPYRIGHT CLAIMS

TMTV moves for summary judgment on some of the actors' Copyright Act claims for designation of ownership. TMTV's motion is denied.

■ In the instant case the plaintiffs seek declaratory judgment that they own the copyrights to certain characters they play on "El Condominio," some of which they also played on "20 Pisos." Their claims arise under 17 U.S.C. § 201. While stock characters are not copyrightable, *see Gaiman*, 360 F.3d at 659–660, characters depicted audiovisually that are "especially distinctive" or "the story being told" receive copyright protection apart from the work in which they appear. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1175 (9th Cir.2003). For example, courts have granted copyright protection for "Godzilla," *Toho Co., Ltd. v. William Morrow and Co., Inc.*, 33 F.Supp.2d 1206, 1215 (C.D.Cal.1998), "James Bond," *Metro–Goldwyn–Mayer, Inc., v. Am. Honda Motor Corp.*, 900 F.Supp. 1287, 1297 (C.D.Cal. 1995), and "Tarzan," *Burroughs v. Metro–Goldwyn–Mayer, Inc.*, 519 F.Supp. 388, 391 (S.D.N.Y.1981).

■ TMTV argues that it is entitled to summary judgment on the plaintiffs' claims, except Logroño's claims to the character Elipidio, on the ground there is no genuine issue as to whether the actors' were the authors of the characters.[2] Specifically, TMTV argues that the actors cannot hold the copyright to the characters, because they did not write the scripts in which they appear. TMTV's argument fails, because it is evident from the record that the actors portrayed the characters in an audio-visual media, which permits a reasonable inference that the actors' contributions to the characters rendered them authors.

### IV. *SUA SPONTE* DISMISSAL OF TMTV'S LANHAM ACT CLAIMS FOR FAILURE TO STATE A CLAIM

*Sua sponte* dismissals should be used sparingly, but are appropriate if it is "crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile." *Chute v. Walker*, 281 F.3d 314 (1st Cir.2002). Here it is crystal clear that TMTV's Lanham Act claims against the WAPA defendants and against the actors must be dismissed.

TMTV claims the WAPA defendants and the actors are liable to it for false designation of ownership under the Lanham Act. The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a), 15 U.S.C. § 1125(a)(1) creates a federal remedy against a person who used in commerce either "any word, term, name, or symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in connection with "any goods or services, or any container for goods." 15 U.S.C. § 1125(a)(1). The Supreme Court held in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003), that Section 43(a) applies only to the producer of tangible goods that were offered for sale, not the author of any idea, concept, or communication embodied in those goods. In *Dastar Corp.*, the plain-

---

2. TMTV does not argue that the characters in their final form are not distinctive enough to be copyrightable.

tiffs had contracted for exclusive rights to manufacture and distribute videos of "Crusade in Europe," a television series. Dastar released a video set based on the "Crusade" series without giving credit to the plaintiffs. The Court rejected the plaintiffs' claim for false designation of origin. It determined no false designation of origin had occurred, because Dastar accurately identified itself as the manufacturer of the physical videos, even if it had not accurately credited others with the creative content. The First Circuit applied *Dastar Corp.* to bar a co-author's claim against a lead author and publisher of a college textbook. *Zyla v. Wadsworth, a Division of Thomson Corp.*, 360 F.3d 243 (1st Cir.2004).

Here TMTV claims that the WAPA defendants' broadcasting of "El Condominio" "is likely to confuse and mislead the public and others to induce the mistaken belief that defendants' sitcom is in some way associated with, endorsed or sponsored by Plaintiff or in some way connected with plaintiff." TMTV did not allege the WAPA defendants falsely identified TMTV as the creator of "El Condominio." It merely alleged that by broadcasting a sitcom similar to one TMTV produced, WAPA gave the public the impression it had done so by arrangement with TMTV. TMTV counterclaims that by playing the characters on "El Condominio" the actors identified themselves as the owners of the copyright to the characters or otherwise demonstrated that they are portraying them with TMTV's permission. TMTV's purported Lanham Act claims effectively are claims that the WAPA defendants and the actors made use of its creative ideas without crediting it, and are barred under *Dastar* and *Zyla*.

## V. ORDER TO SHOW CAUSE

The Court orders the actors to show cause why TMTV is not entitled to summary judgment on their Copyright Act claims on the ground they are untimely under *Santa–Rosa v. Combo Records*, 471 F.3d 224 (1st Cir.2006). In that case the First Circuit held that a claim for declaratory judgment of ownership under the Copyright Act accrues when the plaintiff knows of the alleged grounds for the ownership claim. *Id.* at 227. The First Circuit affirmed dismissal of a singer's designation of ownership claim, reasoning that the plaintiff's designation of ownership claims accrued as soon as he finished recording each album. *Id.* at 228. The actors allege in their complaint and in the joint proposed pretrial order that all but two of the characters subject to their claims were created before 2002. They are ordered to show cause why the defendants are not entitled to summary judgment dismissing their Copyright Act claims. Such good cause shown must demonstrate exactly when each of the actors were first videotaped portraying each of the characters to which they seek designation of ownership. The actors must comply with this order to show cause on or before ten days from entry of this Opinion and Order.

## VI. CONCLUSION

Judgment will be entered dismissing with prejudice TMTV's Copyright Act claims arising from "El Condominio" episodes which aired before June 9, 2002, and all of TMTV's Lanham Act claims. The actors' designation of ownership and tortious interference with contract claims, and TMTV's copyright infringement claims arising from "El Condominio" episodes which aired on or after June 9, 2002 remain before the Court.

**IT IS SO ORDERED.**